UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES D. SZEKERES, ) | |
| ) | Case No. 1:08-CV-01153 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE ANN ALDRICH |
| ) | |
| CSX TRANSPORTATION, INC., ) | |
| ) | <u>MEMORANDUM AND ORDER</u> |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

      This is a workplace injury case in which plaintiff James D. Szekeres ("Szekeres") seeks relief under the Federal Employee Liability Act ("FELA"), 45 U.S.C. §§ 51-60, and the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701, for an injury incurred while attempting to relieve himself near the train tracks where he worked.  Szekeres claims that his injury was the result of defendant CSX Transportation, Inc.'s ("CSX") violation of the FELA and the LIA. CSX is a rail carrier and was Szekeres' employer on the date of his injury.  Now before this court is CSX's motion for partial summary judgment as to the LIA claim [Doc. No. 17] and CSX's motion for partial summary judgment on all claims [Doc. No. 18]. For the following reasons, this court grants the motion.

**I.**  **Background**

      Szekeres was hired as a brakeman for CSX on June 7, 1967.  In July 2005, Szekeres regularly worked on a local CSX freight operation that runs from Cleveland, Ohio to Valley City, Ohio and back. The operation includes multiple stops along the route.  Szekeres was working this route on the date of his injury.

      On January 4, 2006, Szekeres reported to CSX's Clark Avenue office in Cleveland. The outdoor conditions were cold with a misting rain, but not cold enough for snow and ice. Engineer Matthew

Ashby ("M. Ashby"), conductor Larry Ashby ("L. Ashby"), and trainmaster John Whittenberger ("Whittenberger") joined Szekeres as crew members for part of that day's run. Although a restroom was available at CSX's Clark Avenue office, Szekeres does not remember using the restroom at that location. The train departed Cleveland with two locomotives, each of which was equipped with a restroom, including a retention tank toilet. From Cleveland to the first stop in Parma, Ohio, Szekeres rode on the second locomotive while the rest of the crew rode on the lead locomotive. Szekeres did not use the restroom located on the second locomotive.

Once the train arrived in Parma, the crew removed the second locomotive from the train, and Whittenberger departed with the removed locomotive. A CSX office building with a restroom was available to employees at the Parma stop, but Szekeres does not recall using the restroom at that location. The train left Parma bound for Valley City with Szekeres riding on the lead locomotive, which was the only remaining locomotive. During the trip from Parma to Valley City, Szekeres did not need to use the restroom and did not inspect the locomotive's restroom.

Once the train arrived in Valley View, the crew had to turn the train around to return north to Cleveland. This process required a member of the crew, here Szekeres, to exit the locomotive and throw the switch to get the train back on the main line tracks. At some point between arriving in Valley View and exiting the locomotive to switch the track, Szekeres visually inspected the restroom on the locomotive. Szekeres claims the restroom was unsanitary because of an unspecified chemical odor and a dirty toilet seat, both of which prevented him from using the restroom onboard the locomotive. Szekeres claims that he alerted M. Ashby and L. Ashby as to the restroom's condition, but there is no evidence that either party checked the restroom.

After visually inspecting the locomotive's restroom, Szekeres exited the locomotive and walked to the switch. The walkway behind the switch, where Szekeres stood to operate the switch, was muddy, and Szekeres accumulated mud on his boots. He threw the switch and turned to walk up an inclined embankment to privately relieve himself among trees at the top. Like the walkway, the embankment was also muddy. Szekeres slipped while ascending the embankment and twisted his knee, allegedly injuring it. He claims that he slipped as a result of the mud that had accumulated on his boot from the muddy walkway behind the switch. He returned to the locomotive where he relieved himself next to the tracks. Szekeres boarded the train, returned to the Clark Avenue office, and reported the incident to a supervisor.  He wrote a hand-written statement on the date of the incident and filed an official incident report six days later.

CSX denies that the restroom was in a defective or unsanitary condition. On October 11, 2005, the locomotive underwent a federally mandated 92-day inspection. The restroom was checked, and the toilet was refilled. No defects or complaints were noted.  The locomotive's restroom was in the same condition during the next inspection on October 24, 2005.  On December 8, 2005, CSX received a complaint that the locomotive's toilet had frozen, and the toilet was fixed, inspected, and refilled. CSX claims it never received a complaint regarding the condition of the restroom on January 4, 2005.  On January 10, 2005, six days after Szekeres claims the restroom was in violation of the LIA, the locomotive underwent another 92-day inspection. The restroom was checked, and the toilet was refilled. No defects or complaints were noted.

On May 8, 2008, Szekeres filed a complaint against CSX. [Doc. No. 1]. On July 30, 2008, he filed a second amended complaint.  [Doc. No. 10].  CSX filed a partial motion for summary judgment

-3-

on February 27, 2009 [Doc. No. 17] and a motion for summary judgment on all claims on March 3, 2009. [Doc. No. 18].

**II.    Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.

FED. R. CIV. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view all of the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at

-4-

252. General statements or conclusory allegations do not create specific fact disputes "showing that there is a genuine issue for trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**III.     Discussion**

**A. Szekeres' LIA Claim**

Szekeres claims that CSX violated the LIA and applicable provisions of the Code of Federal Regulations ("CFR"). The LIA imposes upon carriers an absolute duty to maintain the parts and appurtenances of their locomotives in safe and proper condition. *Lilly v. Grand Trunk W.R.R. Co.*, 317 U.S. 481, 485 (1943). Section 20701 of the LIA provides as follows:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad lines only when the locomotive or tender and its parts and appurtenances–
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.

To establish a violation of the LIA and withstand summary judgment, Szekeres must show that CSX (1) breached the absolute duty to maintain the parts and appurtenances of its locomotives in safe and proper condition; or (2) failed to comply with regulations promulgated under the Federal Railroad Administration ("FRA"). *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir. 1987). The Secretary of Transportation, acting through the FRA, has the authority to promulgate and enforce safety regulations affecting the working conditions of railroad employees, which resulted in the enactment of the safety regulations contained in the Code of Federal Regulations at 49 C.F.R. §§ 200-68. *Pratico v. Portland Terminal Co.*, 783 F.2d 255, 262 (1st Cir. 1985).

Szekeres has not established a breach of CSX's absolute duty to maintain the parts and appurtenances of its locomotives in safe and proper condition. The condition of the restroom was absent from Szekeres' hand-written statement made the day of the incident. On the incident report completed by Szekeres six days later, he indicated that no defective tool or equipment caused his injury. The incident report contained no mention of a restroom, improper, unsafe or otherwise. Although Szekeres claims he alerted both M. Ashby and L. Ashby as to the poor condition of the restroom, neither he nor any other employee filed a maintenance complaint with CSX. He did not supply any expert testimony that the locomotive was improper or unsafe, and he has not presented any evidence or testimony from other employees establishing an improper or unsafe restroom. During his deposition, Szekeres admitted again that the restroom was not defective. In sum, Szekeres has failed to establish any objective evidence proving that the condition of the restroom on the date of the incident was improper or unsafe. He has failed to establish a breach of CSX's absolute duty under the LIA.

In contrast to Szekeres' lack of evidence, CSX provided three inspection reports, one of which was completed six days after the incident. The reports include inspections of the locomotive's restroom, and no restroom inspection indicated the existence of a defect, or any complaints about the restroom.

Szekeres also claims that CSX violated the LIA through its non-compliance with § 229.139(a) of the CFR, which requires a locomotive's restroom to be "sanitary." "Unsanitary" is defined in part as:

> ...[H]aving any condition in which any significant amount of filth, trash, or human waste is present in such a manner that a reasonable person would believe that the condition might constitute a health hazard; or strong, persistent, chemical or human waste odors sufficient to deter use of the facility, or give rise to a reasonable concern with respect to exposure to hazardous fumes. Such conditions include, but are not limited to . . . visible human waste residue on the floor or toilet seat that is present due to a toilet that overflowed . . . and strong, persistent chemical or human waste odors in the compartment.

49 C.F.R. § 229.5. Szekeres' general allegations concerning the condition of the restroom fail to establish the existence of a CFR violation. General statements or conclusory allegations do not create specific fact disputes "showing that there is a genuine issue for trial." *Lujan*, 497 U.S. at 888-89. Szekeres generally asserted that the restroom had a "chemical smell" and a "dirty" toilet seat. He did not specify the nature of the chemical smell, which is significant because a chemical smell can be indicative of a clean retention tank toilet that is in compliance with § 229.139(a) of the CFR. Nor did he specify the nature of the allegedly dirty toilet seat, the cleanliness of which could range from mere public use to the hazardous presence of human waste. Again, he provided no expert testimony concerning the condition of the restroom and no statements from employees supporting the existence of an unsanitary or unusable restroom. The allegedly unsanitary restroom was not mentioned in any report or filing made by Szekeres or anyone else. Without specific statements of fact supporting his allegations, Szekeres has failed to create a genuine issue of material fact. *See Barry v. CSX Transp., Inc.*, No. 5:05CV2073 (N.D. Ohio Oct. 13, 2006) (finding that plaintiff's mere assertion that a locomotive engine was improper and unsafe was not enough to withstand summary judgment).

**B. Szekeres' FELA Claim**

In addition to his LIA claim, Szekeres claims that CSX is liable for violating the FELA. Section 51 of the FELA provides:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. To present a prima facie case under the FELA, Szekeres must prove that (1) he was injured within the scope of his employment; (2) his employment was in furtherance of CSX's interestate

-7-

transportation business; (3) CSX was negligent in its maintenance of the walkway; and (4) CSX's negligence played some part in causing the injury for which he seeks compensation under FELA. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007).

A FELA plaintiff asserting a cause of negligence against his employer must prove the traditional elements of a negligence claim: duty, breach, foreseeability, and causation. *Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 (6th Cir. 1990). Notice of a defective condition that caused the injury is also an essential element of a plaintiff's negligence claim. Actual or constructive notice must be proved by the plaintiff under the FELA. *Barger v. CSX Transp., Inc.*, 110 F.Supp.2d 648, 653 (S.D. Ohio 2000), citing *Baynum v. Chesapeake & Ohio Ry. Co.*, 456 F.2d 658, 660 (6th Cir. 1972). "In order for notice to create reasonable foreseeability under the FELA, plaintiff must have complained about the condition to a supervisor." *Przybylinski v. CSX Transp., Inc.*, 2007 U.S. Dist. LEXIS 35696, at *10 (W.D. Mich. 2007), *aff'd in part*, 292 Fed. App'x 485 (6th Cir. 2008); *see also Basinger v. CSX Transp., Inc.*, 1996 U.S. App. LEXIS 13139, at *15-16 (S.D. Ohio 2000) ("Unless the complaints were directed to supervisory employees whose knowledge could be imputed to CSX . . . , CSX cannot be charged with knowledge of the alleged defects.").

CSX contends that Szekeres fails to raise any genuine issue of material fact indicating that CSX received notice about a defective condition related to the muddy walkway. Although Szekeres alleges that he told a supervisor about the muddy conditions, he admits only to complaining about the conditions to L. Ashby prior to his injury. L. Ashby is a conductor, not Szekeres' supervisor. Whittenberger was identified by Szekeres as his supervisor on the date of the incident, but there is no testimony alleging that Whittenberger received notice of the muddy conditions before the incident. Whittenberger claims that he received no complaints about the walkway around the switch.

Szekeres did not demonstrate that CSX was on actual or constructive notice of the muddy walkway. Without notice, Szekeres also fails to raise genuine issues of material fact regarding the duty and foreseeability elements of his negligence claim under FELA. Szekeres fails to establish a prima facie case of negligence and, therefore, summary judgment for CSX is appropriate. See *Davis v. Nat'l R.R. Passenger Corp.*,1991 U.S. App. LEXIS 28452, at *7-8 (4th Cir. 1991). (granting summary judgment in favor of the defendant in a FELA action because the plaintiff did not notify this supervisor of allegedly defective walkways).

**IV.   Conclusion**

For the foregoing reasons, CSX's partial motion for summary judgment [Doc. No. 17] and motion for summary judgment on all claims [Doc. No. 18] are granted, and the case is dismissed. This order is final and appealable.

IT IS SO ORDERED.

*/s/ Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: July 2, 2009**